**SO ORDERED.**

**SIGNED September 01, 2006.**



_____
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE
_____

```
                    UNITED STATES BANKRUPTCY COURT
                     WESTERN DISTRICT OF LOUISIANA


IN RE:

JOEL HILL
DEBORAH HILL                              CASE NO. 06-20123

      Debtors                             CHAPTER 13

-----------------------------------------------------------------
                         MEMORANDUM RULING
-----------------------------------------------------------------
```

Joel and Deborah Hill ("Debtors") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 26, 2006. Debtors have filed a chapter 13 plan to which Jeff Davis Bank and Trust Company ("Jeff Davis Bank") has objected. A hearing on confirmation was held on July 6, 2006 at which time the testimony of the Debtors was taken. The court subsequently reset the matter for hearing following the court's ruling in another case on the same legal issue which is at issue herein. At the hearing held on August 24, 2006, the matter was taken under advisement.

The issue herein is whether the Debtors can modify the secured claim of Jeff Davis Bank pursuant to Section 1325(a)(5)(B). The court has recently issued Reasons for Decision[1] on this very issue and held as follows:

> Section 506(a)(1) generally provides that a claim secured by a lien on property of the estate is a secured claim to the extent of the value of the property and is an unsecured claim to the extent that the value of the collateral is less than the amount of the claim. The effect of section 506(a)(1) is to bifurcate certain creditor claims into secured and unsecured portions.
>
> Section 1325(a)(5)(B), which is the cramdown provision, requires the court to confirm a plan over the creditor's objection if the plan provides that: (a) the creditor retains its lien, (b) the allowed amount of the secured claim is paid, and (c) the creditor receives equal monthly payments sufficient to provide the creditor with adequate protection.
>
> The hanging paragraph following section 1325(9) provides in relevant part:
>> For purposes of paragraph (5)[treatment of secured claims], section 506 [providing for bifurcation of under-secured claims] shall not apply . . . if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, . . . .
>
> Thus, the hanging paragraph prohibits cramdown under section 1325(a)(5) if the following facts exist: (a) the creditor holds a purchase money security interest in a

---

[1] *In re Johnson*, Case Number 05-53918, Reasons for Decision entered July 20, 2006.

motor vehicle; (b) the debt was incurred within 910 days of the bankruptcy filing; and (c) the motor vehicle was acquired for the personal use of the debtor.  As the Debtor concedes that the first two requirements are satisfied, the sole issue in the instant case is whether the motor vehicle was acquired for the Debtor's personal use.

Congress, however, in its infinite wisdom, or lack thereof, chose not to define the term "personal use." TMCC contends that the term should be interpreted as meaning not for use for profit or business motive, arguing that the Internal Revenue Service ("IRS") guidelines on business deductions should be used to determine whether a vehicle is used for a business purpose, *i.e.*, if the debtor cannot take a deduction for the expenses relating to the vehicle, the use of the vehicle should be deemed personal.  On the other hand, the Debtors assert that resolution of the dispute should be analyzed in conjunction with the particular exemption law applicable to the case, *i.e.*, since Louisiana is an opt-out state, if the vehicle is exempt under LSA-R.S. 13:3881A(2), the vehicle should be deemed used for a business purpose.  The court disagrees with both approaches.

First of all, the court does not believe that Congress intended the court to rely upon the IRS standards in determining whether a vehicle was acquired for the personal use of the debtor.  In enacting the recent amendments to the Bankruptcy Code, Congress made specific reference to certain provisions of the Internal Revenue Code.  *See, e.g.,* the so-called "means test" found in section 707(b)(2)(A)(ii)(I).  If Congress had intended for the IRS guidelines to apply in cases involving the hanging paragraph, they certainly knew how to do so and obviously chose not to do so. Consequently, and while acknowledging that other courts may have utilized this approach, this court concludes that reference to the IRS standards for a determination of the issue is inappropriate.   Further, the court does not believe that Congress intended the issue to be decided by the exemption statutes applicable to the case.  The United States Constitution gives power to the Congress "to establish . . . uniform laws on the subject of

Page 3

bankruptcies throughout the United States." U.S. Const. art I, § 8, cl. d. If the applicability of the "hanging paragraph" hangs upon the exemption laws of the several states, identical facts may bring about inconsistent results depending upon the forum where the case is pending. Again, the court acknowledges that certain courts have utilized the exemption statutes in analyzing the applicability of the hanging paragraph. Further, the Congress itself has somewhat dodged the "uniformity" requirement of the Constitution in enacting the opt-out provision of section 522(b)(2) which often leads to inconsistent and non-uniform results among the several states. Nonetheless, this court concludes that the exemption laws are not determinative of the business versus personal issue.

The court also acknowledges that many interested persons in addition to the immediate parties before the court are awaiting this court's decision in anticipation of the court establishing a "bright line" test for the determination of business versus personal use. Unfortunately, the court declines to do so, concluding, as is the case in several instances of interpretation under the Bankruptcy Code, the issue should be determined by the "totality of circumstances" approach. *See, e.g., Public Finance Corp. v. Freeman*, 712 F.2d 219 221 (5th Cir. 1983)("the phrase 'proposed in good faith' [in section 1325] must be viewed in light of the totality of the circumstances surrounding confection of a given Chapter 13 plan."); *Matter of Gamble*, 143 F.3d 223, 226 (5th Cir. 1998)(in applying section 523(a)(15)(B), "an assessment of benefit and detriment . . . implicates an analysis of the totality of the circumstances, not just a comparison of the parties' relative net worths.").

Although no litmus test is afforded for deciding the business versus personal issue, the court is able to provide some guidance regarding the factors which should be considered in evaluating the totality of the circumstances. The language of the statute provides some, although minimal, guidance. For the anti-cramdown provision to apply, the motor vehicle must have been "acquired" for the personal use of the debtor. Accordingly, the court must examine the extant

Page 4

circumstances not as of the petition date (as in the case of exemptions), but as of the date the vehicle was acquired. For example, if the vehicle was to be used solely and unquestionably for the debtor's personal use at the time it was acquired, then the anti-cramdown provision of the hanging paragraph would apply. Further, if the plain meaning of the statute is to be enforced as it must[2], this conclusion would not be affected by the debtor's subsequent use of the vehicle for solely and unquestionably business purposes.

Cases arising under the hanging paragraph, however, will not involve situations where the use of the vehicle is solely and unquestionably business or personal. Most, if not all, situations will be similar to the instant case where the use of the vehicle is a blend of business and personal use.

If not the most important consideration, a substantial factor in considering the totality of the circumstances is whether the acquisition of the vehicle enabled the debtor to make a significant contribution to the gross income of the family unit. If it did, then this court concludes that the vehicle was not "acquired for the personal use of the debtor." Again, the court believes the test must be applied as of the date of acquisition, not the date of the bankruptcy filing.

In the instant case, Mrs. Hill is employed at Davita Heathcare and Mr. Hill is not employed. The Debtors own one vehicle, that being the 2001 Ford F150 Super Crew pickup truck, which also represents the collateral for Jeff Davis Bank's claim. Mrs. Hill testified that she is required by her employment to have a vehicle in order to get to and from work. She is not required to have a

---

[2]<u>United States v. Ron Pair Enterprises, Inc</u>., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

Page 5

06-20123 - #23 File 09/01/06 Enter 09/05/06 14:21:02 Main Document Pg 5 of 8

vehicle during the course of the day at her employment. She further testified that sometimes she drives the truck to and from work and sometimes her husband drives her to work and uses the vehicle for personal family purposes and picks her up from work at the end of the day. These circumstances have been in place since the Debtors acquired the vehicle.

Cases arising under the "hanging paragraph" illustrate the frustration that courts have experienced with the 2005 amendments to the Bankruptcy Code. Such frustration was best articulated by Judge Frank Monroe in the case of <u>In re Sosa</u>, 336 B.R. 113, 114 (Bkrtcy. W.D. Tex. 2005):

> The Congress of the United States of America passed and the President of the United States of America signed into law the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act). It became fully effective on October 17, 2005. <u>Those responsible for the passing of the Act did all in their power to avoid the proffered input from sitting United States Bankruptcy Judges, various professors of bankruptcy law at distinguished universities, and many professional associations filled with the best of the bankruptcy lawyers in the country as to the perceived flaws in the Act</u>. This is because the parties pushing the passage of the Act had their own agenda. It was apparently an agenda to make more money off the backs of the consumers in this country. It is not surprising, therefore, that the Act has been highly criticized across the country. In this writer's opinion, to call the Act a "consumer protection" Act is the grossest of misnomers. (Emphasis added.)

It has been argued that <u>any</u> personal use of the vehicle by a debtor triggers the anti-cramdown provision of the hanging

paragraph.  While one might conjecture that the "parties pushing the passage of the Act [and the hanging paragraph in particular] had their own agenda," the statute does not compel a finding that Congressional intent was to prohibit bifurcation if the vehicle was exposed to <u>any</u> personal use.  If that were the case, the escape mechanism of the hanging paragraph, <u>i.e.</u>, cramdown is permitted where the vehicle was not acquired for the personal use of the debtor, would effectively be written out of the law.  And we must assume that Congress didn't intend that absurd result.

This court, in its prior ruling in <u>Johnson</u>, espoused a "totality of circumstances" approach to resolving the issue.  That approach is reaffirmed as the appropriate method of determining whether the hanging paragraph applies.

In the instant case, the use of the vehicle is mixed, both personal and business.  By "business use," the court includes the utilization by the Debtors in generating income for their maintenance and support.  Further, the test must be applied as of the date the vehicle was purchased, as the statute clearly provides the anti-cramdown protection for a "motor vehicle . . . <u>acquired</u> for the personal use of the debtor . . . ."

Considering the totality of the circumstances, the court concludes that the vehicle which stands as collateral for the claim

held by Jeff Davis Bank was not acquired for the personal use of the debtor.  Accordingly, the objection of Jeff Davis Bank is **OVERRULED**.

**IT IS SO ORDERED.**

###